STEPHEN P. FLAGG, *Administrator of Estate of* NANCY TYLER, *v.* PRESCOTT S. EAMES, JAMES M. EAMES, AND JOSEPH CONVERSE.

### *Deed. Construction.*

Where the purpose of the grant is clearly ascertained from the premises of the deed, this will prevail in the construction, and repugnant words will be rejected though they stand first in the grant.

And where the premises contain proper words of limitation, and the *habendum* is repugnant to the grant, the *habendum* yields to the manifest intent and terms of the grant.

A deed conveyed in its granting part to the plaintiff's intestate "and her heirs and assigns forever, a certain piece or parcel of land situated, lying and being in Halifax, and is the same farm on which I" (the grantor) "now live; that is to say, one undivided. half of the same, with the buildings thereon, with the privileges and appurtenances thereto belonging, bounded," etc., (describing the boundaries; "always provided that, in the event of her decease, the same shall revert to me if living, if not, to my heirs—being the same farm which I purchased of Darius Plumb; "—*habendum* to the plaintiff's intestate "and her heirs and assigns, to her and their own proper use, benefit, and behoof forever," with the usual covenants of seizin, warranty, and against incumbrances, and the following clause thereto annexed, viz:—"Always reserving the reversion to myself and heirs as stipulated in the deed." *Held*, that the plain intent of the deed was to convey an estate for life, and not an estate in fee, and that the deed must have effect according to its intent.

EJECTMENT to recover certain lands in Halifax. Plea, the general issue.

The case was submitted to the court upon a statement of facts agreed to by the parties. It appeared from this statement that both parties claimed to have derived title from a common source, to wit, from one Samuel Tyler, who was on the 26th day of February, 1835, the owner in fee of the lands described in the plaintiff's declaration,

and other lands in Halifax adjacent; that Samuel Tyler and Nancy Tyler, on the said 26th day of February, 1835, in anticipation of subsequent intermarriage, made and executed an ante-nuptial agreement, and at the same time, Samuel Tyler made, executed, and delivered to Nancy Tyler, a deed of one undivided half of certain lands in Halifax; that they intermarried soon after the execution of said deed and ante-nuptial agreement, and from the time said papers were executed until the year 1843, they lived upon and occupied said lands, said Nancy claiming all the rights to which she was entitled under said deed and agreement, or either of them. In 1843 Samuel Tyler abandoned his wife, and went to the state of Ohio, where he died September 9th, 1848. On the 18th day of January, 1841, Samuel Tyler conveyed by deed of warranty the other undivided half of said lands to Benjamin Eames; and on the 11th day of June, 1842, he by deed of quit-claim conveyed to the said Eames all his interest in the undivided half of the lands, which he had before conveyed to Nancy Tyler. About the year 1844, Benjamin Eames and Nancy Tyler, by a parol agreement made an arrangement under which they afterwards occupied said lands in severalty, said Nancy occupying the lands described in the declaration (except a tract of about three acres known as the orchard lot) until her decease in January, 1866, and Benjamin Eames and those claiming under him occupying the remaining half of said farm. On the 18th day of October, 1864, Benjamin Eames executed a quit-claim deed of the lands conveyed to him by Samuel Tyler's deed of June 11th, 1842, to the defendants, Prescott S. and James M. Eames. And immediately after the decease of said Nancy, they entered upon and took possession thereof, claiming the whole title thereto under the deed from said Benjamin, and rented a portion of the same to the defendant Converse, who is still in possession under the other defendants.

The material portion of the deed from Samuel Tyler to Nancy Tyler, and of the ante-nuptial settlement, and other facts, are stated in the opinion of the court.

The county court at the September Term, 1866, BARRETT, J. presiding, rendered judgment for the defendants to recover their costs,—to which the plaintiff excepted.

Flagg, Adm'r, *v.* Eames et al.

*Flagg & Waterman,* for the plaintiff.

Nancy Tyler took *an estate in fee* of one undivided half of the lands described in the deed from Samuel Tyler to Nancy Tyler.

I. The first clause in the premises, or granting part of the deed, is " *to her the said Nancy, her heirs,*" &c., by which an estate of inheritance would vest in the grantee—and such an estate could not be defeated by any subsequent words, repugnant thereto, but the former shall stand, and the latter be rejected. 4 Cruise Dig., p. 203–227 ; 2 Chit. Black., p. 381 ; Shepherd's Touchstone, p. 88–102 ; *Shed* v. *Shed,* 3 N. H. 432 ; *Con. Society Halifax* v. *Stark,* 34 Vt. 243. And if *certainty* once appears in a deed, and afterwards it is spoken indifferently, reference shall be to that which is *certain.* 4 Cruise p. 203, sec. 6 ; *Jackson* v. *Gardner,* 8 Johns. 394 ; 2 Wash. on Real Property, 669, sec. 36.

II. If the language is *ambiguous,* it is to be construed *most strongly* against the grantor, (especially in deed poll) and this rule extends to and includes exceptions, reservations and conditions. 4 Cruise above cited, p. 204 ; Shepherd's Touchstone, p. 87 ; 2 Chit. Black., p. 380 ; *Mills* v. *Catlin,* 22 Vt. 98 ; 3 Mass. 361 ; *Mann & Co.* v. *Whittier,* 10 N. H. 305 ; 3 Johns. 375.

III. When the *quantum of interest* is set forth in the premises in a deed, the *habendum itself* cannot by the use of words repugnant, defeat it, but the words in the *habendum* in such case are *void,* and those in the premises stand. Coke's Ab. Baldwin's Case, p. 17 ; 2 Chit. Black., p. 298 ; 4 Kent's Com., p. 468 ; 34 Vt., above cited ; *Adams* v. *Dunklee,* 19 Vt. 382 ; 2 Wash. 691, sec. 63 ; *Ib.* 651, sec. 7. But in this case the *first clause* in the premises and the *habendum* concur in granting an estate *in fee,* and any less estate in the land would be inconsistent with the terms there used. And any attempt to limit and take back the estate by a subsequent clause, is at war with all rules of construction as laid down in the text books, and fully recognized and affirmed by this court in the cases above cited from our own reports, and which are observed with such strictness, that even the intention of the parties is not to prevail against them, for they are regarded as the most reliable way of determining such intention. 4 Cruise, above cited, p. 202 ; Shepherd's Touchstone, p.

85 and 86 ; *Bell* v. *Morse*, 6 N. H. 205 ; *Bridge* v. *Wellington*, 1 Mass. 227.

IV. What is the character of the clauses in this deed which the defendants rely upon, as defeating the *estate* or quantity of interest granted in the first clause in the granting part of the deed ? *a.* They are not an *exception*, for an exception is a clause by which the grantor excepts a part of the thing granted. But a part of *the interest* in the estate or thing granted cannot be excepted. Shep. Touch., p. 77 ; *Bell* v. *Morse*, 6 N. H. 205 ; 2 Wash. R. P. 686, sec. 57. *b.* Not a *reservation*, for a reservation is a clause by which the grantor " reserves some new thing out of, and connected with, what he had before granted," and is employed to reserve rent, or the use of the estate, and must be of that whereof the grantor may have a right to distrain." But here no new thing is reserved, and a man cannot grant *a certain estate in lands*, and then reserve a part of that estate. Shep. Touch., p. 79 ; 4 Cruise, p. 291, sec. 1. *c.* Not a *condition*, for " a condition is a clause of restraint annexed to an estate, staying or suspending the same, and making it *uncertain* whether it shall take effect or not ; " or if it takes effect in the first instance, whether it shall continue or not. And the clause in this deed cannot operate as a *condition*, because instead of suspending the estate, or defeating it upon the happening of an *uncertain* event, whatever estate is granted vests in the grantee *immediately*, and upon the happening of a *certain event*, attempts to revest the whole estate in the grantor. See authorities above cited. 1 Wash. 47 ; *Mills* v. *Catlin*, 22 Vt. cited above ; 2 Wash. 716, sec. 26, 673.

*Charles N. Davenport*, for the defendants, maintained that the deed of February 26th, 1835, from Samuel Tyler to Nancy Tyler conveyed but a life estate, with a reversion, after the determination of the life estate, to Samuel Tyler, and cited the following cases as showing the rules of construction of deeds applicable to this case, viz : *State* v. *Trask*, 6 Vt. 355 ; *Pingree* v. *Watkins*, 15 Vt. 479 ; *Wheelock* v. *Moulton et al.*, 15 Vt. 519 ; *Hickok et al.* v. *Stevens et al.*, 18 Vt. 111 ; *Dawes* v. *Prentice*, 16 Pick. 435 ; *Mills* v. *Catlin*, 22 Vt. 98 ; *Blake et ux.* v. *Stone et als.*, 27 Vt. 475 ; *Smith et als.* v. *Hastings*,

29 Vt. 240; 2 Hill. Ab. 333, sec. 1; *Bridge* v. *Wellington*, 1 Mass. 219; *Wallis* v. *Wallis*, 4 Mass. 135; *Marshall* v. *Fiske*, 6 Mass. 24; *Pray* v. *Pierce*, 7 Mass. 381; *Litchfield* v. *Cudworth*, 15 Pick. 23; *Frost* v. *Spaulding*, 19 Pick. 445; *Chamberlain* v. *Crane*, 1 N. H. 64; 1 Green. Ev. sec. 283; 1 Preston on Estates, pp. 4–5–11.

The opinion of the court was delivered by

KELLOGG, J.   On the 26th February, 1835, Samuel Tyler conveyed by a deed of warranty certain lands in Halifax, being the lands for which this action is brought, to Nancy Tyler, the plaintiff's intestate; and the right of the plaintiff as her legal representative to maintain this action depends on the construction which may be given to this deed.   The parties to the deed had previously been united in the bonds of matrimony, but had been, a few days prior to the execution of the deed, divorced by a decree of this court, and were then intending again to take up the journey of life together by a second entrance into the same bonds.   On the occasion when this deed was executed, another deed, containing an ante-nuptial settlement in contemplation of this second marriage, was executed by and between the said Samuel Tyler of the first part, and the plaintiff's intestate of the second part, and Robert Collins and James L. Stark, trustees, of the third part.   The first mentioned deed in its granting part conveys to the plaintiff's intestate, "and her heirs and assigns forever, a certain piece or parcel of land situate, lying, and being in Halifax, and is the same farm on which I" (the grantor) " now live, that is to say, one undivided half of the same, with the buildings thereon, with the privileges and appurtenances thereto belonging, bounded," etc.— (describing the boundaries,)—" always provided that, in the event of her decease, the same shall revert to me if living, if not, to my heirs, being the same farm which I purchased of Darius Plumb; " *habendum* to the plaintiff's intestate " and her heirs and assigns, to her and their own proper use, benefit, and behoof forever," with the usual covenants of seizin, warranty, and against incumbrances, and the following clause thereto annexed, viz:—" Always reserving the reversion to myself and heirs as stipulated in the deed."   The deed of ante-nuptial settlement above referred to recites that the plaintiff's

intestate " is now possessed of in her demesne or of fee simple for life of one undivided half of the farm which was conveyed to her by me, the said Samuel, by deed of this date, to which reference is made for a more particular description, being the same farm which I purchased of Darius Plumb." And also contains an agreement that if the parties of the first and second part shall think it best to sell the share of the plaintiff's intestate in the farm, or any part of it, they may do so, and the proceeds. of the sale shall be paid to the trustees, who shall invest the same in other real estate such as she shall choose, the deed of which shall be taken in her name, " to whom said estate shall be granted subject to a like reversion of her present estate." The plaintiff claims that the deed first mentioned conveyed to his intestate an estate *in fee* in one undivided half of the farm described in it; while the defendants claim that this deed conveyed to her only an estate *for her life* merely, with a reversion, after the determination of the life estate, to the grantor or his heirs. If the claim of the plaintiff in respect to the construction and legal effect of the deed is well founded, he is entitled to recover; but not otherwise.

It is clear that, in the premises or granting part of this deed, the terms of the description, both in respect to the subject of the grant, and to the estate conveyed, are repugnant and contradictory. The grant might, in equivalent terms, be stated as a grant " of a farm, that is to say, an undivided half of the farm, to the grantee and her heirs and assigns in fee simple, or forever, that is to say, during her natural life." The plaintiff's claim rests upon the rule that if there be two clauses or parts of a deed repugnant the one to the other, the first clause or part shall be received, and the latter rejected; and that where the terms of the deed are ambiguous or doubtful, the construction should be taken most strongly against the grantor, and most in favor of the grantee. Among the rules which are universally observed in the construction of all kinds of deeds, the following are stated in Shepherd's Touchstone, p. 86 :—1. That the construction be favorable, and as near to the minds and apparent intents of the parties as possible it may be and law will permit: for *benigne sunt faciendæ interpretationes chartarum propter simplicitatem laicorum.*

*Et verba intentioni non e contra debent inservire.* 3. That too much regard be not had to the native and proper definition, significations, and acceptance of words and sentences, to pervert the simple intentions of the parties ; *   * for the law is not nice in grants, and therefore it doth oftentimes transpose words contrary to their order to bring them to the intention of the parties ; and it is a rule of law *   * that neither false Latin nor false English will make a deed void when the intent of the parties doth plainly appear  4. That the construction be made upon the entire deed, and that one part of it doth help or expound another, and that every word, if it may be, may take effect, and none be rejected, and that all the parts do agree together, and there be no discordance therein.   In 3 Atk. 136, it is said by Lord Ch. J. WILLES, that words are not the principal thing in a deed, but the intent and design of the grantor, and that the words are to be construed in a manner most agreeable to the meaning of the grantor, and that words which are merely insensible are to be rejected.   It has always been recognized as a cardinal principle in the interpretation of deeds that the intention of the grantor, when it is plainly and clearly expressed, or can be collected or ascertained from the deed, is to be observed and carried into effect unless it is in conflict with some rule of law ; and that whatever is repugnant to the general intention of the deed, or the obvious particular intention of the grantor, is to be rejected, if such intention is consistent with the rules of law.   2 Wash. Real Prop. Law, 628 ; *State* v. *Trask*, 6 Vt. 355.   It was said by BENNETT, J., in *Noyes & Co.* v. *Nichols*, 28 Vt. 159, that technical rules of construction in the interpretation of a contract are not to be resorted to where the meaning of the party is plain and obvious ; and in *Jackson* v. *Meyers*, 3 Johns. 383, KENT, C. J., states the rule in these words :—" The intent, when apparent and not repugnant to any rule of law, will control technical terms ; for the intent, and not the words, is the essence of every agreement.   In the exposition of deeds, the construction must be upon the view and comparison of the whole instrument, and with an endeavor to give every part of it meaning and effect."

Applying these rules of construction to the interpretation of this deed, we think that it is impossible not to see that the intention of

the grantor was to convey to the plaintiff's intestate an estate for her life, and not an estate in fee.　This intention is plainly expressed on the face of the deed ; and the ante-nuptial settlement, which is the act of both parties, contains a distinct recognition of the fact that the estate conveyed to her by the deed was only a life estate.　It is quite apparent that the deed was very unskillfully drawn, and that the words or terms used by the scrivener, which import a conveyance of an estate in fee simple, were introduced into the deed as mere words of form, without the slightest apprehension of their legal meaning or effect ; and they are clearly repugnant to the general intent and purpose apparent on the face of the deed.　If a life estate only was intended to be conveyed, the terms of the grant which are repugnant to this intention should be rejected, and the deed should be allowed to have effect according to its intent.　The words in the deed which express that intent are not in form or substance words creating a technical exception, reservation, or condition, but they are words which clearly define and limit the estate conveyed ; and whether we regard the premises of the deed, without reference to its other parts and clauses, or take every part of the deed into consideration, in seeking to ascertain its object and general intent, we find no more occasion to doubt that only a life estate was intended to be conveyed by it than we have to doubt that only an undivided half of the farm was the thing granted by it.　Where the-purpose of the grant is clearly ascertained from the premises of the deed, and the premises contain proper words of limitation, and the *habendum* is repugnant to the grant, the *habendum* yields to the manifest intent and terms of the grant.　Of so little importance is the *habendum* deemed, compared with the words of the grant, that if it is clearly repugnant to the grant, it is treated as of no validity or effect.　2 Wash. R. P. Law, 642 ; Shepherd's Touchstone, 75–76.　The terms in this deed which indicate the purpose to convey a life estate are a part of the grant ; and we think that the repugnant words which, considered separately, would import the conveyance of an estate in fee simple are not to be preferred merely because they stand first in the grant. The words which are repugnant to each other are not contained in different clauses in the deed, but form part of its granting clause ;

and the general intent of the deed ought not to be controlled by the mere order of the words used. When the manifest intent of the deed appears, the words which are repugnant to it are to be rejected. The rule upon which the plaintiff relies, that a deed shall be construed most strongly against the grantor and favorably to the grantee in respect to the thing granted and the estate conveyed, is said by Prof. Washburn to be the last which courts apply, and to be one which is never resorted to so long as a satisfactory result can be reached by other rules of analysis and construction. 2 Wash. R. P. Law, 628.

Judgment of the county court for the defendants affirmed.